WILSON T. GRAHAM, APPELLANT, v. ROBERT HANSON ET AL., APPELLEES.*

FILED MARCH 28, 1913. No. 17,110.

1. **Vendor and Purchaser:** ACTION FOR DEPOSIT: BURDEN OF PROOF. Where a sum of money is deposited in the hands of a third person, as the balance of a purchase price of certain real estate, to be paid to the vendor when the land in question is surveyed, and a plat thereof together with a certificate to the effect that the title of the purchaser is valid, and that no mountain is situated upon the land, the burden of proof is on the vendor to show a substantial compliance with the agreement, in order to entitle him or his assignee to the payment of the fund deposited.

2. ———: ———: DEFENSES: BURDEN OF PROOF. In such a case, if the defendant seeks to prevent the payment of the money so deposited, on the ground that the land attempted to be sold and conveyed to him has no potential existence, the burden is upon him to establish such defense by a preponderance of the evidence.

3. **Evidence** examined, and found to be insufficient to establish that defense.

* Rehearing denied. See opinion, p. 605, *post*.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed with directions.*

*Brome, Ellick & Brome,* for appellant.

*Park B. Pulsifer, Parish & Martin* and *W. C. Lambert,* contra.

BARNES, J.

Plaintiff commenced this action in the district court for Douglas county, to recover the sum of $2,000, which had been deposited with the First National Bank in the city of Omaha, and $1,000 deposited with a bank in Concordia, in the state of Kansas, as a balance of the purchase price of a tract of land situated in the Republic of Mexico, under a written agreement, which reads as follows:

"Omaha, Nebraska, Nov. 15, 1906.

"It is stipulated and agreed by the undersigned parties hereto in settlement of Mexican land proposition as follows: It is stipulated and agreed that $2,000 is to be left with the First National Bank of Omaha. $1,000 of this is left by G. M. Culver, and $1,000 by J. G. Armstrong, W. J. Winston and W. V. Bennett, until parties of the second part have 10,630 acres surveyed and a plat of the survey furnished to Mr. Culver and Mr. Hanson. The land in question is in a tract of land known as La Joya in the state of Oaxaca, Mexico.

"If any of this land is covered by a mountain at or near Piedra De Sol, and it is understood that the mountain mentioned in this contract is not to mean hills, then there is to be a reduction allowed of $1 per acre for the land covered by said mountain, and to be taken out of the $2,000 equally. As soon as the land is surveyed, the $2,000 is to be turned back to G. M. Culver, Armstrong, Winston and Bennett at once, or if any of said land is covered by the said mountain, $1 per acre shall be paid to Robert Hanson, and the balance ½ to G. M. Culver and the other ½ to Armstrong, Winston and Bennett.

"It is further agreed that a certificate of examination shall be furnished by J. L. Starr Hunt, as soon as it is possible to procure same, or from some other reputable attorney as to the title of the land in question. The surveying in question is to be done at once or as soon as it is possible to procure surveyors and men to do same. The $1,000 now in the Farmers' and Merchants' Bank at Concordia, Kansas, mentioned in former contract, is also to be turned over to Armstrong, Winston and Bennett as soon as the plat is furnished Culver and Hanson, or to the president of the Toltec Tropical Company of Concordia, Kansas. (Signed) Robert Hanson, G. M. Culver, J. G. Armstrong, W. J. Winston, W. V. Bennett."

It was alleged that Armstrong, Winston and Bennett had complied with all of the conditions of the agreement on their part, and had assigned to plaintiff the money deposited under the contract; that plaintiff had made demand upon the bank for the money mentioned in the contract, which demand for payment had been refused. It was further alleged that the bank was threatening and was about to pay the fund in question to the defendants, or some other person designated by them. Plaintiff prayed for an order of injunction restraining the bank from making such threatened payment, and for a judgment for the sum of $3,000, with interest thereon, and for other further and general equitable relief.

To this petition defendant Robert Hanson filed a separate answer, admitting the nonresidence of himself and Culver, the sale of 10,630 acres of land to the Toltec Tropical Land Company, the making of the deposits in the Kansas bank and the First National Bank of Omaha; averred that in executing the written agreement for the deposits he was acting as an officer and agent of the Toltec Tropical Land Company; disclaimed having any right, title or interest in the funds on deposit; averred that they were the property of the Toltec Tropical Land Company, and denied all other allegations of plaintiff's amended petition. Thereafter, the defendant the Toltec

Tropical Land Company filed a petition of intervention, and averred its corporate existence; alleged that the defendant Robert Hanson was at all times its president and general manager; that all of his acts in respect to the matter in controversy were on behalf of and for the intervener; alleged a transfer to the intervener prior to the commencement of this action of all of the interest of the defendant G. M. Culver in the fund in controversy; alleged that plaintiff is not the real party in interest, but that the real parties in interest are intervener and the defendants Armstrong, Winston and Bennett; alleged an assignment by Culver, prior to the commencement of the action, to intervener of all of the interest in the fund in the First National Bank of Omaha; and averred that prior to November 15, 1906, the intervener had agreed to purchase from the defendants Armstrong, Winston and Bennett 10,630 acres of forest land in Mexico, and had agreed to pay therefor the sum of $20,000; that it had paid in cash the sum of $500, and had on deposit, for the purpose of paying the balance of said purchase price, the further sum of $18,500, and had by agreement retained in the bank at Concordia, Kansas, the sum of $1,000 to cover the expenses incident to a survey of said land; that the defendants Armstrong, Winston and Bennett had caused to be executed to the intervener a deed, purporting to convey lands in Mexico, describing by metes and bounds the land alleged to have been conveyed; that Armstrong, Winston and Bennett had agreed to have the land surveyed and identified by cutting through the forest a path or line around said land; that this had not been done on November 15, 1906, at the time the contract of that date was made; that defendant Hanson, in making the contract, acted solely for intervener; that defendants Armstrong, Winston and Bennett failed to comply with the terms of said agreement, having failed to cause the land to be surveyed, or to cause the plat of the survey to be furnished to the intervener, or to the defendants Culver or Hanson, and failed to procure and deliver to intervener,

or any one in its behalf, a certificate of examination by J. L. Starr Hunt, or any other attorney, or person, as to the title of the land in question; that, upon execution of the agreement of November 15, 1906, there was paid to defendants Armstrong, Winston and Bennett all moneys remaining due and unpaid upon the purchase price of the land, excepting the $2,000 remaining in the hands of the Omaha bank, and the $1,000 remaining in the hands of the bank at Concordia, Kansas. It was further alleged, that the two funds in the banks aforesaid became the property of the intervener, and that ever since November 15, 1906, intervener has been entitled to receive this money, but intervener has been kept out of the use of the money; and it was prayed that the funds be adjudged the property of the intervener, and ordered turned over to it, and for a judgment against the plaintiff and the defendants Armstrong, Winston and Bennett for interest on the fund from November 15, 1906, and for general equitable relief.

Intervener also set up as a further defense that defendants Armstrong, Winston and Bennett did not own the 10,630 acres of land conveyed to the intervener; that the title thereto had failed, and it was sought to recover a judgment in favor of the intervener and against the defendants Armstrong, Winston and Bennett for the portion of the purchase price paid, with interest and damages. This last mentioned cause of action was by a demurrer eliminated from the pleadings, and the plaintiff answered the petition of intervention by denying all of the averments thereof not specifically admitted; admitted the intervener to be a nonresident corporation; and alleged that it was prohibited from transacting business in the state of Nebraska by reason of its failure to comply with the law of this state as to filing statements with the attorney general, and obtaining an occupation permit, pursuant to the laws of this state.

Defendant Winston answered plaintiff's amended petition by admitting the purchase of the land by Hanson, and the conveyance of title to the Toltec Tropical Land Com-

pany, the making of the agreement, and the deposit of November 15, 1906, and the compliance by Armstrong, Winston and Bennett with that agreement; denied the assignment of the claim against Hanson to the plaintiff, Graham; and averred affirmatively that he had never authorized such assignment. The answer of the First National Bank admitted its possession of the $2,000 deposit, averred that it was a mere stakeholder, and was ready and willing at any time to turn the money over to whomsoever the court should designate is entitled to receive it. A trial was had to the court upon the foregoing issues, and resulted in a finding and judgment for the defendants. Plaintiff filed a motion for a new trial, supported by affidavits which are found in the bill of exceptions. The motion was overruled, and the plaintiff has brought the case to this court by appeal.

The appellant contends that the district court erred in its findings for the intervener, the Toltec Tropical Land Company; that its findings and judgment thereon awarding to the intervener the fund deposited in the First National Bank of Omaha are not sustained by the evidence. Upon the issues made by the pleadings, in order for the plaintiff to recover the fund in question, he was required to prove, by a preponderance of the evidence, that the land sold and conveyed to the intervener by Armstrong, Winston and Bennett, known as the Nebraska Tropical Development Company, had been surveyed; that a proper plat of such survey, together with a certificate of the validity of the Toltec company's title to the land in question, had been furnished to the defendant Hanson or the Toltec company by J. L. Starr Hunt, or some other reputable attorney of the city of Mexico, and that there was no mountain situated upon the said tract of land.

Plaintiff, to maintain this issue, produced the deposition of one Herman Erle, taken in the city of Mexico in May, 1910, who testified, in substance, that in the early part of 1907, commencing January 10, he began a survey of the land in question, and completed his work in the

month of March following; that he surveyed the land and established the corners; that the land surveyed by him was the tract conveyed to the Toltec company, as shown in a plat or map called "Graham's exhibit A 1," which is a certified copy of the official map of what is known as the La Joya tract. At the examination of witness Erle, the defendants produced a small plat or copy of the plat furnished defendant Hanson by Armstrong, Winston and Bennett, showing the portion of the La Joya tract surveyed by the witness. It appears that the plat or map of the survey made by this witness was not certified at the time it was delivered to defendant Hanson, but either the plat so furnished or a copy of it was afterwards sent to the surveyor, his certificate was appended to it, and it was delivered to the defendant Hanson. The evidence of surveyor Erle is not disputed, nor is his reliability, competency or integrity directly called into question. There is also found in the bill of exceptions a certificate made by one Lawrence Bedford, who, it appears, is a reliable, practicing attorney of the city of Mexico, in which he stated that, upon an examination of the title of the land in question, it is his opinion that it was properly conveyed to the Toltec company, and its title thereto is good and perfect in all respects. This evidence is not directly disputed by the defendants, but it is contended that the vendor, the Nebraska company, was required to have the surveyor cut a path through the forest of tropical growth on the lines of survey sufficient to enable defendants to ride around the land, and thus view and examine it. It must be observed that the written contract contains no such agreement. We are therefore of opinion that the evidence is not sufficient to authorize and require a finding for the defendants upon this question. It is strenuously contended, however, that the Toltec company obtained nothing by its deed from the Nebraska company, because the land described therein had no potential existence, or, in other words, the whole tract, or at least a part of it, was the property of other

persons or corporations. It must be conceded that to maintain that issue the burden of proof was on the defendants.

The record discloses that the La Joya lands, of which the tract in question is a part, amounting to some 60,000 acres, were sold and conveyed by the municipality of Jacatepec to one Karl E. Sheldon, by a deed dated the 13th day of October, 1904, executed in his favor by Mr. Francisco Santiago, municipal agent for the municipality of Jacatepec, according to the orders of the political chief of the district of Tuxtepec, and approved by the government of the state of Oaxaca, under a decree of the court of first instance, in a proceeding in which all of the persons, corporations, companies and municipalities bordering upon the land in question, or in any other way interested therein, were made parties, who had all renounced or granted the land, so far as their interests were concerned, to the municipality of Tuxtepec, to be sold by it to the grantee above named; that Karl E. Sheldon conveyed to the Nebraska company, limited, on the 17th day of November, 1904, something over 17,400 acres of this land, which conveyance appears to be regular and in accordance with the laws of Mexico; that thereafter the Nebraska company sold and conveyed the land in question, which is a part of the La Joya tract, amounting to 10,630 acres, to the defendant the Toltec company, and, as above stated, the land so conveyed to the Toltec company was surveyed, and the corners established by the witness, Herman Erle.

To overthrow this evidence the defendants produced the deposition of one Delaney W. Cobb, taken in the city of Mexico, who testified, in substance, that he had had some experience in engineering and surveying; that he was acquainted with the lands in the vicinity of what he designates as the Piedra De Sol, a well-known and established landmark, something over three miles distant from the nearest corner of the land in question, in a southeasterly direction; that he was also well acquainted with

the location of another well-known and established land-mark, a considerable distance from the southwest corner of this land, known as Mano Marquez; that these land-marks were situated upon the north bank of the Rio De Cajones river; that he had traced the course and followed the meanderings of this river from Piedra De Sol to Mano Marquez, and that this river runs through the tract of land in question; that on the south bank of the river is the municipality of Ozumacin, that on the east of La Joya are the lands of the Rendon company, that on the north bank of the river he found coffee plantations, and other improved tracts of land that belonged to corporations or companies other than the Toltec company. This witness, however, does not claim to have surveyed the lines of the tract of land in question, or that he was ever upon the land, unless he was there at the time he was following the course of the Rio De Cajones river. His testimony is corroborated by the evidence of one Williamson, who also claims to have some knowledge of the river and of the lands south of the La Joya tract.

It is argued that surveyor Erle should have started his survey at Piedra De Sol, and, failing to do so, his work was not entitled to credit. It appears, however, that Erle commenced his survey at what is known and conceded to be the northwest corner of the municipality of Jacatepec; that, starting from that point, he ran his survey to a point which he established as the northwest corner of the land in question; that from that point he surveyed the line between the municipality of Chiltapec and Jacatepec, that line being the north boundary of the Toltec com-pany's land; that he continued his survey along the line, and established the northeast corner of this land; that he then went back and surveyed from the northwest corner directly south, and established the southwest corner of the land; that from that point he ran a line in a north-easterly direction to the place where he established the southeast corner of this tract; that he did not run the line between the southeast corner and the northeast cor-

ner of this land, because it was not required, the remainder of the survey being merely a matter of mathematical calculation; that the tract thus surveyed contained a little more than 10,630 acres; that in running his lines he did not cross the Rio De Cajones river, which was so far south of the south line of his survey that he was not able to see it or ascertain its locality; that there was no improved land in the vicinity of his lines of survey, and that the tract of land which he surveyed is what is known as virgin forest.

Without unnecessarily extending this opinion, it may be said that his testimony was strongly corroborated by other evidence, including the testimony of one Vickers, who also made an examination of the land and the country surrounding it. We are therefore of opinion that defendants failed to establish their defense that the land purchased by the Toltec company had no potential existence by a preponderance of the evidence.

It was stated upon the hearing of this case that another suit was pending in the district court for Douglas county between some of the parties to this action, in which the defendant the Toltec company was seeking to recover the purchase price of this land from defendants Armstrong, Winston and Bennett, or the Nebraska company, and, for that reason, we decline to decide the merits of that controversy in this case, and what is said in this opinion is not to have any bearing upon the trial of that case. We simply determine that the defendants failed to establish the defense of nonexistence of the land in question, and that the evidence in this case is insufficient to sustain a judgment in their favor.

This case seems to depend largely upon the case pending between the vendor and vendee of the tract of land in question. The claim of this plaintiff depends upon the rights of the Nebraska company as against the intervener herein. The determination of that case will dispose of some, if not all, of the issues in this case. The bank will, of course, retain the fund involved until the main case is disposed of.

The judgment of the district court is reversed and the cause remanded, with directions to continue the same until the case between these defendants and the intervener is disposed of.

REVERSED.